Good morning. May I please the court? My name is Lance Hopkins. I'm here today for Daniel Lopez. At the outset, I'd like to note that we believe that there was a breach of the plea agreement here, and we believe that this breach was plain error. Did you object to that? It was not objected to. Did you set forth a plain error argument in your brief? Your Honor, I did not in my opening brief, but we did in our reply brief. There is case law out there that says that you can raise that in a reply brief. If I had to do it all over again, I'd raise it in the opening brief, but we did raise it in our reply brief. That case is Xander, United States v. Xander's Tenth Circuit case, 794 Fed 3rd, 1220. If you want to rely on that, and if it's not in your briefing, give us a 28J letter. Yes, Your Honor. Thank you. We believe it meets the plain error standard. It was there for the prosecutor to repudiate the plea agreement. Well, was it repudiation, or was it just unenthusiastic? I think it was really a repudiation. He specifically said that he was not repudiating it, that he was supporting it. Yes, he did, but he also said, I didn't negotiate this. Yeah, that's right. He's not going to be blamed for it. He didn't say, don't follow it. I don't want you to follow it. He did not repudiate, as you suggest. He might have watered it a little bit. Well, when you stand up before a court, before you really get into the sentencing, you tell the court, I didn't negotiate this. That's a pretty strong criticism of the plea agreement. Well, he even subtracted the 39 months. I mean, he followed it all the way down. Well, he recommended that, but the judge didn't do that in the Senate. Well, I know, and the judge was not bound by it either. But he didn't start recommending things until he strongly criticized the plea agreement. And with the court mentioning that, I'd like to direct the court to U.S. v. Holly, 93-Fed-3rd-682. Again, if that's not in your brief, if you give us a 28-J letter. It's in the brief. Okay. Yeah. 93-Fed-3rd-692, it says the government cannot rely upon a rigidly literal construction of the language of the agreement. So he stood up and said, I recommend the court that it run the sentence concurrent with the state sentences. All he said was, because I am bound by the plea agreement, that is what I will honor. Because I never want to be viewed as breaching a plea agreement. That then went on to... Correct. But the way he said it, by repetitively calling this plea agreement a sweet deal for my client. Like, you know, why even mention that he didn't negotiate it? He is trash, but like, there's really no reason for a prosecutor at a sentencing stand up and say, Judge, I didn't negotiate this plea agreement. Actually, I agree with you on that point. He's there that, he or she is there that day to represent the United States of America. And that's the job. And the agreement is as you've set it out. So your job is to stand up and say, Your Honor, this is our agreement. I agree with that, yes. The problem, though, is what Judge Kelly is pointing out. It's sort of, so what? He could have been more professional. I agree with you. But did he really ask the court to sentence your client to a lesser term? That's the question. Well, the, you know, when you look at the cases, it's, there's a case in here, too. I think it's Kadjo or Kachuka, which is in the brief. Yeah, Kachuka, right. It says here, while a prosecutor normally need not present promise recommendations to the court with any particular degree of enthusiasm, it is improper for the prosecutor to inject material reservations about the agreement to which the government has committed. And when you look at the record here, he did, he and, this is a sweet deal for Mr. Lopez. He says on multiple occasions, I didn't negotiate this plea agreement. That is injecting a material reservation about the agreement. Well, in the Kachuka case, he specifically said the sentence was too low. Now, the guy did not indicate that he was happy with what they were doing. But he never said that I'm going to honor it, but it's too low, Judge. He didn't follow it, essentially. I agree, he didn't specifically say that, but he said a lot of things that are tantamount to that. He's apologized, before we, he looked at the transcript, the sentencing transcript, before they even get started, he's apologizing for this plea agreement right out of the box. He's saying, I didn't negotiate this. He's basically throwing his colleagues at the U.S. Attorney's Office under the bus. He's saying that they basically negotiated a giveaway to my client. When a prosecutor comes out and makes representations like that, what's a judge to think? What's a judge to do? Well, he followed the sentence. He was not, he followed the months. He was never bound by the concurrent or consecutive issue. That is correct. In fact, that's the only discretionary aspect of the sentencing. Provided he accepted the plea agreement. And I think that's why, that's all the more important for the prosecutor to stand by the plea agreement and defend the plea agreement to the court, not ridicule it. The only discretionary decision before the district court that day was whether to run this sentence concurrent or consecutive. And by trashing the agreement, he basically said to the court, he invited the court. Well, the court could have rejected the whole agreement. I'm not going to buy into this. True. But he didn't. That's right. And he did say that even a day less than the proposed sentence is an insult to the federal sentencing guidelines. So the court was not enamored with the deal either, but he took it. He definitely, you know, strongly criticized the deal. Hold on, so you get to the, go ahead. Oh, sorry. Well, and part of your plain error analysis requires that you show that his substantial rights were affected, which means that you've got to show there's a reasonable probability that but for this, what you're alleging is prosecutorial misconduct, the result would have been different. But I read the transcript and this judge passionately explained why, vehemently explained why he was not going to run those sentences concurrently. How can you meet that prong of the plain error? And even if we accept everything you say, don't you fail on that prong anyway? I think we can prevail on that prong, and here's why. Everything, the entirety of the judge's comments were subsequent to the prosecutor's thorough, in my opinion, repudiation of the plea agreement or criticism of the plea agreement for sure. I've been practicing law in federal court in the eastern and northern districts of Oklahoma for 20 years, and I've represented a lot of people like Mr. Lopez with plea agreements that are career offenders, armed career criminals, many of whom, like Mr. Lopez, have cooperated. And judges routinely accept sentences of 20 years or less for career offenders who have cooperated, and we've got cooperation here. The government filed a motion for downward departure. It was granted. But having been through a lot of these sentencings myself, every sentencing I've had where we've had cooperation, the prosecutor stood up there and said, this is our plea agreement, we think this is in the interest of justice, and this is why. He could have made that argument. There's substantial cooperation here. We have a guy who accepted responsibility, and if I submit to the court that the prosecutor would have done what prosecutors, based on my experience, normally do at these type of hearings, advise the court of this cooperation, is acceptance of... Our standard is not really what your experience has been. I mean, we have to look at whether or not the plea agreement was breached on this record under the law that applies. Yeah, I understand. I... I get your point. And then, you know, of course, these type of issues changed after the Peckett case, the Supreme Court case, but when you look at the case law, there's a lot of case law out there that says when there is a breach of a plea agreement, we have to remedy this breach irrespective of whether or not the court accepted the plea agreement, or whether or not the court would have done something different, or whether or not the court was affected by it, or impacted by it. Yeah, and that's really, as Judge McHugh has pointed out, that's really the question, isn't it? Is, was the court affected by these comments? And, you know, as I read the record as well, the district court apparently would really have rather had a longer sentence, and the best the court could do to make it longer was to run it consecutive. I mean, the words pretty much burn off the page. You know, I can't hide from what the judge said at the sentencing. But I do submit to the court that if this, if there would not have been a breach of the plea agreement, and it would have been like a normal sentencing, not just based on my experience, but I think what you normally expect without a breach of the plea agreement, the judge very well may have looked at this differently. But I think a lot of the judge's comments here were invited by the prosecutor, because when you look at the transcript... Well, I'm actually looking at the transcript right now, and the court is giving a lot of detail about Mr. Lopez's significant criminal history based on the pre-sentence investigation report, including that he grew up in a two-parent household where both parents were working and, you know, lived in a neighborhood. I mean, he obviously had an impression about the sentence here that he had to hold his nose to approve it, his exact words, based on what he knew before he stepped on the bench based on reading the pre-sentence report. So, I mean, in some ways, your client is lucky he accepted the term of the sentence. Yes. My answer would be you're going to have criminal history like that involving any sentencing with someone that's armed career criminal or career offender. And that's why it's really important for the prosecutor to make a good-faith recommendation. We did not have a good-faith recommendation to the court to follow to the court to it was not a good-faith recommendation to run the sentences concurrent with the state sentences in light of the prosecutor's negative comments toward the plea agreement and, you know, repetitively saying he didn't negotiate it. Basically, when he did that, he criticized his colleagues at the U.S. Attorney's Office. I'll briefly reserve the rest of my time. Thank you. May it please the Court. You're still tall. May it please the Court. Bishop Grewell, again, on behalf of the United States. As the panel has mentioned, there were several comments from the sentencing judge. The sentence is almost criminal that he had to hold his nose because that would be an insult to the federal sentencing statute. I don't think prong three can be met because I don't think there was any recommendation that was going to change that. And even before the prosecutor got up and spoke, even on page 12, you can see that the judge is concerned about the defendant trying to sort of put some of the blame on his childhood. When he talks about how this page 12 of Volume 4 of the record that the defendant's not absolutely horrified and repulsed by that, but he's vowing never to participate again and expose himself to such a ruinous lifestyle. So the judge clearly had a view coming into the sentencing. Secondly, I don't think the plainness prong can be met. All of Mr. Lopez's cases really involved the government promising to do one thing and then actively doing the opposite or asking the Court to consider something that was really contrary to the promised position. I think Kachucha is the defendant's best case because it sort of has some of this dicta about material reservations. But the prosecutor there said that the sentence was too low which was really directly contrary to not asking for a variance from the sentencing guidelines. And finally, I don't even think there's error here. While it was somewhat inartful, I think if you look at pages 14 through 16 of Volume 4 and 19 through 20, the prosecutor here, I think what he was really unenthusiastic about was something that wasn't in the plea agreement that was being asked for. And this was the 39 months below the C1C to give Mr. Lopez some credit for time served in the state. That's not about the sentence being concurrent going forward. That's about giving him credit for something that wasn't in the agreement. He was also, I think, responding to this effort again to shift some of the blame to the childhood and he makes some comments about that as well. So I don't think there was even error here unless there are further questions. So when you go back, you'll visit with your colleague and say, without this activity, we would have not had this appeal? I've already actually spoken with my colleague and he's actually gone on to another position outside of the Department of Justice. All right. Thank you. Thank you. Unless the court has any other questions, I don't have anything else. Thank you. Thank you both for your arguments this morning. The case is submitted.